DocuSign Envelope ID: A40832B0-300C-492E-904D-083B6C99624C

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Northern _____ District of __Texas_____
(State)

Case number (*if known*): _____ Chapter __7__

☐ Check if this is an amended filing

## Official Form 205

# Involuntary Petition Against a Non-Individual

12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

| Part 1: | Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed |
|---|---|

**1. Chapter of the Bankruptcy Code**

*Check one:*

☒ Chapter 7
☐ Chapter 11

| Part 2: | Identify the Debtor |
|---|---|

**2. Debtor's name**

WALL017 LLC

**3. Other names you know the debtor has used in the last 8 years**

Include any assumed names, trade names, or *doing business as* names.

**4. Debtor's federal Employer Identification Number (EIN)**

☒ Unknown

EIN __ __ – __ __ __ __ __ __ __

**5. Debtor's address**

**Principal place of business**

13901 Midway Rd., Ste. 102
Number          Street

Dallas _____ TX _____ 75244
City                    State     ZIP Code

Dallas
County

**Mailing address, if different**

_____
Number          Street

_____
P.O. Box

_____
City          State     ZIP Code

**Location of principal assets, if different from principal place of business**

_____
Number          Street

_____
City          State     ZIP Code

| Debtor | WALL017 LLC | Case number (if known) |
|---|---|---|
| | Name | |

**6. Debtor's website** (URL)       N/A

_____

**7. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other type of debtor. Specify: _____

**8. Type of debtor's business**

*Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☒ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☐ None of the types of business listed.
☐ Unknown type of business.

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

☒ No
☐ Yes. Debtor _____    Relationship _____

District _____ Date filed _____    Case number, if known _____
                                                        MM / DD / YYYY

Debtor _____    Relationship _____

District _____ Date filed _____    Case number, if known _____
                                                        MM / DD / YYYY

---

**Part 3:    Report About the Case**

**10. Venue**

*Check one:*

☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.

☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*

☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

☒ No
☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

---

Debtor   WALL017 LLC
_____
Name                                          Case number (if known) _____

| 13. **Each petitioner's claim** | Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|---|
| | Xiaomin Fan | Loan Debt | $ 70,000.00 |
| | Di Tang | Loan Debt | $ 22,000.00 |
| | *See attached list of additional Petitioning Creditors | | $ _____ |
| | | Total of petitioners' claims | $ 319,533.33* |

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

| Petitioners or Petitioners' Representative | Attorneys |
|---|---|
| **Name and mailing address of petitioner** | |
| Xiaomin Fan | Jiangang Ou, Esquire |
| Name | Printed name |
| E-8D Huating Jiayuan, No. 6 Middle North Forth Ring Road | Nguyen & Chen, LLP |
| Number   Street | Firm name, if any |
| Chaoyang District, Beijing, China | 11200 Westheimer, Ste. 120 |
| City              State          ZIP Code | Number   Street |
| | Houston                          TX          77042 |
| **Name and mailing address of petitioner's representative, if any** | City              State          ZIP Code |
| | Contact phone  832-767-0339  Email  jou@nguyen-chen.com |
| Name | |
| | Bar number  5451133 |
| Number   Street | |
| | State  NY |
| City              State          ZIP Code | |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  3/25/2020
MM / DD / YYYY

✗ *Xiaomin Fan*
  004478EEBEF5489...
Signature of petitioner or representative, including representative's title

✗ /s/ Jiangang Ou
Signature of attorney

Date signed  04/08/2020
MM / DD / YYYY

DocuSign Envelope ID: 1D2CC88E-E125-4D78-9502-B9CE6EA41E0D

Debtor    <u>WALL017 LLC</u>
Name

Case number (if known) _____

---

**Name and mailing address of petitioner**

_____
Name

_____
Number    Street

_____
City           State      ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number    Street

_____
City           State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____
MM / DD / YYYY

✘ _____
Signature of petitioner or representative, including representative's title

---

Stephen M. Packman, Esquire
_____
Printed name

Archer & Greiner, P.C.
_____
Firm name, if any
Three Logan Square
1717 Arch St., Ste. 3500
_____
Number    Street

Philadelphia          PA      19103
City           State      ZIP Code

Contact phone   215-246-3147    Email spackman@archerlaw.com

Bar number    018271989; 57283; 2749356

State      NJ; PA; NY

✘ /s/ Stephen M. Packman
_____
Signature of attorney

Date signed    04/08/2020
MM / DD / YYYY

---

**Name and mailing address of petitioner**

Di Tang
_____
Name

F05-05C, Fenglin Lvzhou, Datun Rd.
_____
Number    Street

Chaoyang District, Beijing, China
_____
City           State      ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number    Street

_____
City           State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   3/31/2020
MM / DD / YYYY

✘ *Di Tang*
DocuSigned by:
F9539E674221433...
Signature of petitioner or representative, including representative's title

---

_____
Printed name

_____
Firm name, if any

_____
Number    Street

_____
City           State      ZIP Code

Contact phone _____ Email _____

Bar number _____

State _____

✘ _____
Signature of attorney

Date signed _____
MM / DD / YYYY

---

DocuSign Envelope ID: 0017375A-DA49-4BEE-A2EA-4724D800668B

### ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Jialin Hu | Loan Debt | $22,000.00 |
| Qin Chu | Loan Debt | $20,000.00 |
| Jiaxiang Lu | Loan Debt | $18,200.00 |
| Fuqing Chen | Loan Debt | $12,000.00 |
| Hanjiang Fu | Loan Debt | $11,000.00 |
| Aiguo Luo | Loan Debt | $10,000.00 |
| Fang Ding | Loan Debt | $10,000.00 |
| Xiangdong Zhu | Loan Debt | $10,000.00 |
| Wai Ying | Loan Debt | $9,000.00 |
| Yuan Yuan | Loan Debt | $8,333.33 |
| Chao Xu | Loan Debt | $5,500.00 |

**Name and mailing address of petitioner**
Jialin Hu
No 7, Longteng Road Maoshan Industry
Zone, Jiangshan Village, Jinzhou
District,Ningbo, Zhejiang Province, China



X_____                    3/23/2020

**Name and mailing address of petitioner**
Qin Chu
No.13 Plant Building, No. 8 Hangdu Rd.,
Damaiwan Industrial District, Hangtou Town,
Pudong New Area, Shanghai, China



X_____

**Name and mailing address of petitioner**
Jiaxiang Lu
Room 196, 1st Xiyuan District, Luojia
Village, Wenxin Street, Xihu District,
Hangzhou, Zhejiang Province, China

X_____

WALL017 LLC

DocuSign Envelope ID: 98C92DF7-2798-4458-BEA8-4EC81816CFE0

## ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Jialin Hu | Loan Debt | $22,000.00 |
| Qin Chu | Loan Debt | $20,000.00 |
| Jiaxiang Lu | Loan Debt | $18,200.00 |
| Fuqing Chen | Loan Debt | $12,000.00 |
| Hanjiang Fu | Loan Debt | $11,000.00 |
| Aiguo Luo | Loan Debt | $10,000.00 |
| Fang Ding | Loan Debt | $10,000.00 |
| Xiangdong Zhu | Loan Debt | $10,000.00 |
| Wai Ying | Loan Debt | $9,000.00 |
| Yuan Yuan | Loan Debt | $8,333.33 |
| Chao Xu | Loan Debt | $5,500.00 |

**Name and mailing address of petitioner**
Jialin Hu
No 7, Longteng Road Maoshan Industry
Zone, Jiangshan Village, Jinzhou
District,Ningbo, Zhejiang Province, China


X_____

**Name and mailing address of petitioner**
Qin Chu
No.13 Plant Building, No. 8 Hangdu Rd.,
Damaiwan Industrial District, Hangtou Town,
Pudong New Area, Shanghai, China


X_____ 3/23/2020

**Name and mailing address of petitioner**
Jiaxiang Lu
Room 196, 1st Xiyuan District, Luojia
Village, Wenxin Street, Xihu District,
Hangzhou, Zhejiang Province, China


X_____


WALL017 LLC

## ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Jialin Hu | Loan Debt | $22,000.00 |
| Qin Chu | Loan Debt | $20,000.00 |
| Jiaxiang Lu | Loan Debt | $18,200.00 |
| Fuqing Chen | Loan Debt | $12,000.00 |
| Hanjiang Fu | Loan Debt | $11,000.00 |
| Aiguo Luo | Loan Debt | $10,000.00 |
| Fang Ding | Loan Debt | $10,000.00 |
| Xiangdong Zhu | Loan Debt | $10,000.00 |
| Wai Ying | Loan Debt | $9,000.00 |
| Yuan Yuan | Loan Debt | $8,333.33 |
| Chao Xu | Loan Debt | $5,500.00 |

**Name and mailing address of petitioner**
Jialin Hu
No 7, Longteng Road Maoshan Industry
Zone, Jiangshan Village, Jinzhou
District,Ningbo, Zhejiang Province, China



X_____

**Name and mailing address of petitioner**
Qin Chu
No.13 Plant Building, No. 8 Hangdu Rd.,
Damaiwan Industrial District, Hangtou Town,
Pudong New Area, Shanghai, China



X_____

**Name and mailing address of petitioner**
Jiaxiang Lu
Room 196, 1st Xiyuan District, Luojia
Village, Wenxin Street, Xihu District,
Hangzhou, Zhejiang Province, China



DocuSigned by:

X *Jiaxiang Lu* _____  3/21/2020
24E7D7926921453...

WALL017 LLC

## ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**
Fuqing Chen
Room 808, Building 5B, Qianhejiayuan, No.
108, East Road, North Fourth Ring Road,
Beijing, China

X _____ 3/23/2020
*FUQING CHEN*
1EFB359D25F6474...

**Name and mailing address of petitioner**
Hanjiang Fu
Room 201, Gate 1, Building 1, Yaojiangfu
Village, Shangcheng District, Hangzhou,
Zhejiang Province, China

X _____

**Name and mailing address of petitioner**
Aiguo Luo
2-2-1401 West Garden, Jialvjingyuan, Xihu
District, Hangzhou, Zhejiang Province, China

X _____

**Name and mailing address of petitioner**
Fang Ding
No. 2, Lane 218, West Xiuyan Road, Pudong
District, Shanghai, China

X _____

**Name and mailing address of petitioner**
Xiangdong Zhu
Room 1705, No. 8 Building 2, Lvdi
Haiwaitan Huayuan, Yunfei Road, Jiangbei
District, Ningbo, Zhejiang Province, China

X _____

WALL017 LLC

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

## ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**
Fuqing Chen
Room 808, Building 5B, Qianhejiayuan, No.
108, East Road, North Fourth Ring Road,
Beijing, China


X_____


**Name and mailing address of petitioner**
Hanjiang Fu
Room 201, Gate 1, Building 1, Yaojiangfu
Village, Shangcheng District, Hangzhou,
Zhejiang Province, China

X_____      3/22/2020


**Name and mailing address of petitioner**
Aiguo Luo
2-2-1401 West Garden, Jialvjingyuan, Xihu
District, Hangzhou, Zhejiang Province, China


X_____


**Name and mailing address of petitioner**
Fang Ding
No. 2, Lane 218, West Xiuyan Road, Pudong
District, Shanghai, China


X_____


**Name and mailing address of petitioner**
Xiangdong Zhu
Room 1705, No. 8 Building 2, Lvdi
Haiwaitan Huayuan, Yunfei Road, Jiangbei
District, Ningbo, Zhejiang Province, China


X_____


WALL017 LLC

## ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**
Fuqing Chen
Room 808, Building 5B, Qianhejiayuan, No.
108, East Road, North Fourth Ring Road,
Beijing, China


X_____


**Name and mailing address of petitioner**
Hanjiang Fu
Room 201, Gate 1, Building 1, Yaojiangfu
Village, Shangcheng District, Hangzhou,
Zhejiang Province, China


X_____


**Name and mailing address of petitioner**
Aiguo Luo
2-2-1401 West Garden, Jialvjingyuan, Xihu
District, Hangzhou, Zhejiang Province, China

DocuSigned by:

X _Aiguo Luo_____  3/22/2020
E80095102CD7489...

**Name and mailing address of petitioner**
Fang Ding
No. 2, Lane 218, West Xiuyan Road, Pudong
District, Shanghai, China


X_____


**Name and mailing address of petitioner**
Xiangdong Zhu
Room 1705, No. 8 Building 2, Lvdi
Haiwaitan Huayuan, Yunfei Road, Jiangbei
District, Ningbo, Zhejiang Province, China


X_____


WALL017 LLC

## ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**
Fuqing Chen
Room 808, Building 5B, Qianhejiayuan, No.
108, East Road, North Fourth Ring Road,
Beijing, China


X_____


**Name and mailing address of petitioner**
Hanjiang Fu
Room 201, Gate 1, Building 1, Yaojiangfu
Village, Shangcheng District, Hangzhou,
Zhejiang Province, China


X_____


**Name and mailing address of petitioner**
Aiguo Luo
2-2-1401 West Garden, Jialvjingyuan, Xihu
District, Hangzhou, Zhejiang Province, China


X_____


**Name and mailing address of petitioner**
Fang Ding
No. 2, Lane 218, West Xiuyan Road, Pudong
District, Shanghai, China

X _____   3/22/2020
*Ding Fang*
3FAD10B850E047D...

**Name and mailing address of petitioner**
Xiangdong Zhu
Room 1705, No. 8 Building 2, Lvdi
Haiwaitan Huayuan, Yunfei Road, Jiangbei
District, Ningbo, Zhejiang Province, China


X_____


WALL017 LLC

## ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**
Fuqing Chen
Room 808, Building 5B, Qianhejiayuan, No.
108, East Road, North Fourth Ring Road,
Beijing, China


X_____


**Name and mailing address of petitioner**
Hanjiang Fu
Room 201, Gate 1, Building 1, Yaojiangfu
Village, Shangcheng District, Hangzhou,
Zhejiang Province, China


X_____


**Name and mailing address of petitioner**
Aiguo Luo
2-2-1401 West Garden, Jialvjingyuan, Xihu
District, Hangzhou, Zhejiang Province, China


X_____


**Name and mailing address of petitioner**
Fang Ding
No. 2, Lane 218, West Xiuyan Road, Pudong
District, Shanghai, China


X_____


**Name and mailing address of petitioner**
Xiangdong Zhu
Room 1705, No. 8 Building 2, Lvdi
Haiwaitan Huayuan, Yunfei Road, Jiangbei
District, Ningbo, Zhejiang Province, China



X_____    3/22/2020


WALL017 LLC

## ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**

Wai Ying

Room 502, Gate 3, Building 13,
Lefujiangnan, No B1 Yongding Road,
Haidian District, Beijing, China



X_____    3/23/2020

**Name and mailing address of petitioner**

Yuan Yuan

7-1, Ruili Zhongyang Huacheng, Jiangling
Road, Binjiang District, Hangzhou, Zhejiang
Province, China



X_____

**Name and mailing address of petitioner**

Chao Xu

6A1203 Knode Building, Road Qianhai Lake
Intersection, Nanshan District, Shenzhen,
Guangdong Province, China

X_____

218163640v2

WALL017 LLC

DocuSign Envelope ID: EBF25AAB-B0C3-4EC4-B7FA-FAAB1FDE5F6A

## ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**
Wai Ying
Room 502, Gate 3, Building 13,
Lefujiangnan, No B1 Yongding Road,
Haidian District, Beijing, China


X_____

**Name and mailing address of petitioner**
Yuan Yuan
7-1, Ruili Zhongyang Huacheng, Jiangling
Road, Binjiang District, Hangzhou, Zhejiang
Province, China

X 3/26/2020

**Name and mailing address of petitioner**
Chao Xu
6A1203 Knode Building, Road Qianhai Lake
Intersection, Nanshan District, Shenzhen,
Guangdong Province, China


X_____

218163640v2

WALL017 LLC

## ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**
Wai Ying
Room 502, Gate 3, Building 13,
Lefujiangnan, No B1 Yongding Road,
Haidian District, Beijing, China



X_____

**Name and mailing address of petitioner**
Yuan Yuan
7-1, Ruili Zhongyang Huacheng, Jiangling
Road, Binjiang District, Hangzhou, Zhejiang
Province, China

X_____

**Name and mailing address of petitioner**
Chao Xu
6A1203 Knode Building, Road Qianhai Lake
Intersection, Nanshan District, Shenzhen,
Guangdong Province, China



X_____     3/23/2020

218163640v2

WALL017 LLC

## ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
| --- | --- | --- |
| Guoqin Zhou | Loan Debt | $9,000.00 |
| Yijing Wu | Loan Debt | $82,500.00 |

**Name and mailing address of petitioner**
Guoqin Zhou
22-2, Xinda Yinjun Xiangyuan, No.777
Xijiao Rd., Yuecheng District, Shaoxing City,
Zhejiang Province, China

DocuSigned by:

X _Guoqin Zhou_____        4/7/2020
4ADEA6F85B57429...

**Name and mailing address of petitioner**
Yijing Wu
8-2607, Xuante Jiayuan, No.1 Shilibao,
Chaoyang District, Beijing, China

X_____

218292359v1

WALL017 LLC

## ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Guoqin Zhou | Loan Debt | $9,000.00 |
| Yijing Wu | Loan Debt | $82,500.00 |

**Name and mailing address of petitioner**
Guoqin Zhou
22-2, Xinda Yinjun Xiangyuan, No.777
Xijiao Rd., Yuecheng District, Shaoxing City,
Zhejiang Province, China


X_____


**Name and mailing address of petitioner**
Yijing Wu
8-2607, Xuante Jiayuan, No.1 Shilibao,
Chaoyang District, Beijing, China



X_____          4/6/2020

218292359v1

WALL017 LLC

DocuSign Envelope ID: A40832B0-300C-492F-904D-083B6C99624C

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
|     Alleged Debtor. | |

### DECLARATION OF XIAOMIN FAN IN SUPPORT OF INVOLUNTARY PETITION

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.    I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2.    Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3.    The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.    More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.    As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6.    The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/25/2020

DocuSigned by:

*Xiaomin Fan*

0D4478EEBEF5489...

XIAOMIN FAN

218182938v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __December 26__, 2018, and is between _Fan Xiaomin_ (Passport No: __E26113857__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1   <u>The Loan.</u>      Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a)   <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.   Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b)   <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $ _300,000___ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $ _300,000_ - Three Hundred Thousand_ and No/100 Dollars

Interest:  Interest amount equal to _Fourteen_ percent (_14_%) per annum commencing on _January 1st, 2019__, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __January 1st, 2020___.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of _January 1st, 2021___.  Sums not paid by such times, shall bear interest at the rate of _Sixteen__ percent (_16_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

    (c)    <u>Loan Purpose</u>:

        (i)    The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property"). The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

        (ii)    <u>No Commitment for Additional/Permanent Financing</u>: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    <u>Pre-payment</u>. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## <u>Representations of Borrower</u>

Borrower represents, covenants, and warrants that:

2.1    <u>Representations</u>. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    <u>Power and Authority</u>: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3    <u>Violation of Law; Breach of Agreements</u>. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

DocuSign Envelope ID: A40832B0-300C-492F-904D-083B6C99624C

(a)     Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)     Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4     <u>Enforceability</u>.   The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5     <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

### Affirmative Covenants of Borrower

3.1     <u>Covenants</u>

(a)     Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)     All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)     Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2     Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

     (a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

     (b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4

4.3     Automatic Acceleration.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1     Definitions.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4     Texas Law.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

DocuSign Envelope ID: A40832B0-300C-492F-904D-083B6C99624C

5.5     Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6     Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7     Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

        TO AGENT:               Platinum Investment Corporation
                                Attn:  Michael Fu
                                B4-1015 West Lake International
                                Hangzhou
                                Michael@yding.cn
                                281-318-8611

        TO BORROWER:            Wall 017, LLC
                                c/o Tim Barton
                                1755 Wittington Place, Suite 340
                                Dallas, TX  75234
                                tbarton@jmjdevelopment.net
                                972-385-9934 (office)

        TO CO-LENDER:           Fan Xiaomin
                                E-8D, Huating Jiayuan, No. 6 Beisihuan Zhonglu,
                                Chaoyang District, Beijing, China
                                wangzhiqing220@163.com
                                (86) 18601199358

5.8     Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9     Representations Survive.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan.  All

statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    No Waiver.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    Confidentiality.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

AGENCY AND LOAN AGREEMENT Wall017
4052018_017

**"CO-LENDER"**



12/27/2018

**"BORROWER"**

WALL 017, LLC



1/7/2019

By:

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By:
Name: Michael Fu
Title:   Chief Executive Officer

12/26/2018

DocuSign Envelope ID: A40832B0-300C-492F-904D-083B6C99624C

## AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __January 16__, 2019, and is between _Fan Xiaomin_ (Passport No: __E26113857__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1   <u>The Loan.</u>   Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

    (a)   <u>Agency</u>: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

    (b)   <u>Terms of Lender Commitment</u>: Co-Lender agrees to lend $ _200,000____ of the total loan amount of $8,800,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

        Principal and interest:

        Principal: USD $_200,000_ - Two Hundred Thousand_ and No/100 Dollars

        Interest: Interest amount equal to _Fourteen_ percent (_14_%) per annum commencing on _February 1st, 2019__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _February 1st, 2020___. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of _February 1st, 2021___. Sums not paid by such times, shall bear interest at the rate of _Sixteen__ percent (_16_%) per annum from the dates payments were due.

    Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

     (c)    <u>Loan Purpose</u>:

        (i)    The Loan shall be evidenced by this Agreement.  The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property").  The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

        (ii)    <u>No Commitment for Additional/Permanent Financing</u>:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    <u>Pre-payment</u>.  Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest.  Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal.  Prepayments shall be applied to payments next due under the Loan.

# ARTICLE TWO

## Representations of Borrower

     Borrower represents, covenants, and warrants that:

2.1    <u>Representations</u>.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    <u>Power and Authority</u>:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3    <u>Violation of Law; Breach of Agreements</u>.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

2

DocuSign Envelope ID: A40832B0-300C-492F-904D-083B6C99624C

    (a)    Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

    (b)    Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4    <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5    <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## <u>Affirmative Covenants of Borrower</u>

3.1    <u>Covenants</u>

    (a)    Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

    (b)    All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

    (c)    Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2    Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

DocuSign Envelope ID: A40832B0-300C-492F-904D-083B6C99624C

4.3     Automatic Acceleration.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1     Definitions.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4     Texas Law.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

AGENCY AND LOAN AGREEMENT Wall017
4052018_017

DocuSign Envelope ID: A40832B0-300C-492F-904D-083B6C99624C

5.5     Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6     Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7     Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:           Platinum Investment Corporation
                    Attn:  Michael Fu
                    B4-1015 West Lake International
                    Hangzhou
                    Michael@yding.cn
                    281-318-8611

TO BORROWER:        Wall 017, LLC
                    c/o Tim Barton
                    1755 Wittington Place, Suite 340
                    Dallas, TX  75234
                    tbarton@jmjdevelopment.net
                    972-385-9934 (office)

TO CO-LENDER:       Fan Xiaomin
                    E-8D, Huating Jiayuan, No. 6 Beisihuan Zhonglu,
                    Chaoyang District, Beijing, China
                    wangzhiqing220@163.com
                    (86) 18601199358

5.8     Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9     Representations Survive.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan.  All

6

statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    <u>No Waiver</u>.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    <u>Confidentiality</u>.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

7

**"CO-LENDER"**



1/16/2019

**"BORROWER"**

WALL 017, LLC



By: _____ 1/24/2019

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _____ 1/16/2019
Name: Michael Fu
Title:  Chief Executive Officer

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

### <u>DECLARATION OF DI TANG IN SUPPORT OF INVOLUNTARY PETITION</u>

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.      I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>").  I have firsthand knowledge of the facts as set forth herein.

2.      Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3.      The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.      More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.      As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

DocuSign Envelope ID: 1D2CC88E-E125-4D78-9502-B9CE6EA41E0D

6.      The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  3/31/2020

DocuSigned by:

*Di Tang*

F9539E674221433...

DI TANG

218182970v1

2

DocuSign Envelope ID: 1D2CC88E-E125-4D78-9502-B9CE6EA41E0D

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __January 23__, 2019, and is between __Tang Di____ (Passport No: __ED8190323__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1     <u>The Loan.</u>     Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a)     <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b)     <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $ _200,000____ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. In the event the loan is not fully funded within a 4 month period, then upon request, the Co-Lender shall be entitled to receive their initial funded amount within a five days following the end of the 4 month period.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_200,000_-_Two Hundred Thousand__  and No/100 Dollars

Interest:  Interest amount equal to _Eleven_ percent (_11_%) per annum commencing on _February 1st, 2019__, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __February 1st, 2020___.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of _February 1st, 2021___.  Sums not paid by such times, shall bear interest at the rate of _Thirteen__ percent (_13_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for

such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c)   <u>Loan Purpose</u>:

(i)   The Loan shall be evidenced by this Agreement.  The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property").  The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

(ii)   <u>No Commitment for Additional/Permanent Financing</u>:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.   <u>Pre-payment</u>.  Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest.  Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal.  Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## <u>Representations of Borrower</u>

Borrower represents, covenants, and warrants that:

2.1   <u>Representations</u>.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2   <u>Power and Authority</u>:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification.  The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2

2.3    <u>Violation of Law; Breach of Agreements</u>.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

    (a)    Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

    (b)    Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4    <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5    <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## <u>Affirmative Covenants of Borrower</u>

3.1    <u>Covenants</u>

    (a)    Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

    (b)    All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

    (c)    Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2    Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

3

DocuSign Envelope ID: 1D2CC88E-E125-4D78-9502-B9CE6EA41E0D

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

     (a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

     (b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

4

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3    Automatic Acceleration.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4    Right of Set Off.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5    Progress Reporting.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

### Miscellaneous

5.1    Definitions.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2    Construing Loan Papers.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3    Renewals and Extensions.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5

5.4    Texas Law.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5    Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6    Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7    Guarantee.  JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8    Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

        TO AGENT:              Platinum Investment Corporation
                               Attn:  Michael Fu
                               B4-1015 West Lake International
                               Hangzhou
                               Michael@yding.cn
                               281-318-8611

        TO BORROWER:           Wall 017, LLC
                               c/o Tim Barton
                               1755 Wittington Place, Suite 340
                               Dallas, TX  75234
                               tbarton@jmjdevelopment.net
                               972-385-9934 (office)

        TO CO-LENDER:          Tang Di
                               F05-05C,Fenglin Lvzhou,Datun Rd,Chaoyang
                               District,Beijing, China
                               tangdi98@gmail.com
                               (86) 13901032830

DocuSign Envelope ID: 1D2CC88E-E125-4D78-9502-B9CE6EA41E0D

5.9 <u>Place of Payment</u>. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 <u>Representations Survive</u>. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 <u>No Waiver</u>. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 <u>Confidentiality</u>. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

1/23/2019

**"BORROWER"**

WALL 017, LLC

By: _____  1/28/2019
      Tim Barton as President of Carnegie Development, LLC,
      The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _____  1/23/2019
Name: Michael Fu
Title:  Chief Executive Officer

AGENCY AND LOAN AGREEMENT Wall017
4052018_017

DocuSign Envelope ID: 0017375A-DA49-4BEE-A2EA-4724D800668B

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
|      Alleged Debtor. | |

## <u>DECLARATION OF JIALIN HU IN SUPPORT OF INVOLUNTARY PETITION</u>

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.     I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>"). I have firsthand knowledge of the facts as set forth herein.

2.     Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3.     The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.     More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.     As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6.      The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim

subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United

States of America that the foregoing is true and correct.


Dated:  3/23/2020

DocuSigned by:

*Hu Jialin*

C87SCF68E31142C...

JIALIN HU


218183174v1

DocuSign Envelope ID: 0017375A-DA49-4BEE-A2EA-4724D800668B

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __January 16__, 2018, and is between __Hu Jialin__ (Passport No: __E28511084__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

### The Loan

1.1 __The Loan.__ Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

    (a)   __Agency:__ Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

    (b)   __Terms of Lender Commitment:__ Co-Lender agrees to lend $ __200,000__ of the total loan amount of $8,800,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. In the event the loan is not fully funded within a 4 month period, then upon request, the Co-Lender shall be entitled to receive their initial funded amount within a five days following the end of the 4 month period. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

        Principal and interest:

        Principal: USD $__200,0000__ - _Two Hundred Thousand__ and No/100 Dollars

        Interest: Interest amount equal to __Eleven__ percent (_11_%) per annum commencing on __February 1st, 2019__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after __February 1st, 2020__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __February 1st, 2021__. Sums not paid by such times, shall bear interest at the rate of __Thirteen__ percent (_13_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for

such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c)    <u>Loan Purpose</u>:

(i)    The Loan shall be evidenced by this Agreement.  The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property").  The Property has a transactional cost of $11,000,000 and the balance of funds will be provided by Borrower.

(ii)    <u>No Commitment for Additional/Permanent Financing</u>:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    <u>Pre-payment</u>.  Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest.  Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal.  Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

### Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1    <u>Representations</u>.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    <u>Power and Authority</u>:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification.  The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2

2.3     Violation of Law; Breach of Agreements.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a)     Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)     Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4     Enforceability.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5     Taxes.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

# ARTICLE THREE

## Affirmative Covenants of Borrower

3.1     Covenants

(a)     Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)     All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)     Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2     Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

3

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3    Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4    Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5    Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6    Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1    <u>Events of Default</u>.    An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

    (a)    Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender or Agent to Borrower.

    (b)    Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender or Agent to Borrower.

4.2    <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3     Automatic Acceleration.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

# ARTICLE FIVE

## Miscellaneous

5.1     Definitions.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5

5.4     Texas Law.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5     Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6     Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7     Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

            TO AGENT:                   Platinum Investment Corporation
                                        Attn:  Michael Fu
                                        B4-1015 West Lake International
                                        Hangzhou
                                        Michael@yding.cn
                                        281-318-8611

            TO BORROWER:                Wall 017, LLC
                                        c/o Tim Barton
                                        1755 Wittington Place, Suite 340
                                        Dallas, TX  75234
                                        tbarton@jmjdevelopment.net
                                        972-385-9934 (office)

            TO CO-LENDER:               Hu Jialin
                                        No.7 Longteng Rd., Maoshan Industrial Zone, Jiangshan County, Yinzhou District, Ningbo, Zhejiang, China
                                        edgar1@vip.163.com
                                         (86) 13805881990

5.8     Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9     <u>Representations Survive</u>.   All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan.   All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    <u>No Waiver</u>.   No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    <u>Confidentiality</u>.   The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.   The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

DocuSign Envelope ID: 0017375A-DA49-4BEE-A2EA-4724D800668B

**"CO-LENDER"**



1/22/2019

**"BORROWER"**

WALL 017, LLC



By: _____ 1/24/2019

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _____ 1/16/2019

Name: Michael Fu
Title: Chief Executive Officer

8

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
|      Alleged Debtor. | |

**<u>DECLARATION OF QIN CHU IN SUPPORT OF INVOLUNTARY PETITION</u>**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.    I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>").  I have firsthand knowledge of the facts as set forth herein.

2.    Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3.    The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.    More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.    As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6.      The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:  3/23/2020

DocuSigned by:

_Qin Chu_

C0E7ADA1861E41E...

QIN CHU


218183193v1

DocuSign Envelope ID: 98C92DF7-2798-4458-BFA8-4EC81816CFE0

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __December 5__, 2018, and is between __Chu Qin__ (Passport No: __G35777596__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1     The Loan.     Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

    (a)     Agency:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

    (b)     Terms of Lender Commitment:  Co-Lender agrees to lend $ _200,000____ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

        Principal and interest:

        Principal: USD  $ _200,000_-__Two Hundred Thousand__ and No/100 Dollars

        Interest:  Interest amount equal to  _Ten_ percent (_10_%) per annum commencing on _January 1st, 2019__, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __January 1st, 2020___.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of _January 1st, 2021___.  Sums not paid by such times, shall bear interest at the rate of _Twelve__ percent (_12_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

DocuSign Envelope ID: 98C92DF7-2798-4458-BFA8-4EC81816CFE0

    (c)    <u>Loan Purpose</u>:

    (i)    The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property"). The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

    (ii)    <u>No Commitment for Additional/Permanent Financing</u>: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    <u>Pre-payment</u>. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## <u>Representations of Borrower</u>

    Borrower represents, covenants, and warrants that:

2.1    <u>Representations</u>. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    <u>Power and Authority</u>: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3    <u>Violation of Law; Breach of Agreements</u>. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

2

DocuSign Envelope ID: 98C92DF7-2798-4458-BFA8-4EC81816CFE0

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 <u>Enforceability</u>. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 <u>Taxes</u>. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## <u>Affirmative Covenants of Borrower</u>

3.1 <u>Covenants</u>

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     Events of Default.      An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

  (a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

  (b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     Optional Acceleration.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

DocuSign Envelope ID: 98C92DF7-2798-4458-BFA8-4EC81816CFE0

4.3     Automatic Acceleration.   All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.   Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.   Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1     Definitions.   Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.   This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.   This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4     Texas Law.   This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5    Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6    Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7    Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation |
| | Attn:  Michael Fu |
| | B4-1015 West Lake International |
| | Hangzhou |
| | Michael@yding.cn |
| | 281-318-8611 |
| | |
| TO BORROWER: | Wall 017, LLC |
| | c/o Tim Barton |
| | 1755 Wittington Place, Suite 340 |
| | Dallas, TX  75234 |
| | tbarton@jmjdevelopment.net |
| | 972-385-9934 (office) |
| | |
| TO CO-LENDER: | Chu Qin |
| | No.13 Plant Bldg.,  No.8 Hangdu Rd., Damaiwan Industrial Zone, Hangtou County, Pudong District,  Shanghai, China |
| | gracechu@evan.com.cn |
| | (86) 13917538546 |

5.8    Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9    Representations Survive.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the

6

DocuSign Envelope ID: 98C92DE7-2798-4458-BFA8-4EC81816CFE0

Loan.  All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    <u>No Waiver</u>.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    <u>Confidentiality</u>.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

DocuSign Envelope ID: 98C92DF7-2798-4458-BFA8-4EC81816CFE0

**"CO-LENDER"**

_[signature: Chu Gin]_                12/5/2018

C0E7ADA1861E41E...


**"BORROWER"**

WALL 017, LLC

By: _[signature: Tim Barton]_                12/11/2018

55E2C214E42B42F

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC


**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _[signature: Michael Fu]_                12/5/2018

86EE266F063C423...

Name: Michael Fu
Title:  Chief Executive Officer

DocuSign Envelope ID: 7C2E3D32-ABE3-4FD2-80D2-F855F719E760

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

## <u>DECLARATION OF JIAXIANG LU IN SUPPORT OF INVOLUNTARY PETITION</u>

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6.      The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  3/21/2020

_Jiaxiang Lu_
24E7D792692J453
JIAXIANG LU

218183201v1

## AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __January 30__, 2019, and is between __Lu Jiaxiang__ (Passport No: _E38595236__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1   <u>The Loan.</u>   Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

    (a)   <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

    (b)   <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $ _130,000___ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  In the event the loan is not fully funded within a 4 month period, then upon request, the Co-Lender shall be entitled to receive their initial funded amount within a five days following the end of the 4 month period.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

        Principal and interest:

        Principal: USD $_130,000___ - _One Hundred and Thirty Thousand __ and No/100 Dollars

        Interest:  Interest amount equal to ___Fourteen__ percent (_14_%) per annum commencing on __February 1st, 2019___, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __February 1st, 2020___.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of ____February 1st, 2021__.  Sums not paid by such times, shall bear interest at the rate of ____Sixteen___ percent (_16__%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for

such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c)    <u>Loan Purpose</u>:

(i)    The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property"). The Property has a transactional cost of $11,000,000 and the balance of funds will be provided by Borrower.

(ii)    <u>No Commitment for Additional/Permanent Financing</u>:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    <u>Pre-payment</u>. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

### Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1    <u>Representations</u>.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    <u>Power and Authority</u>:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

DocuSign Envelope ID: 7C2E3D32-ABE3-4FD2-80D2-F855F719E760

2.3   <u>Violation of Law; Breach of Agreements</u>.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a)   Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)   Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4   <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5   <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## <u>Affirmative Covenants of Borrower</u>

3.1   <u>Covenants</u>

(a)   Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)   All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)   Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2   Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

3

DocuSign Envelope ID: 7C2E3D32-ABE3-4FD2-80D2-F855F719E760

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

    (a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender or Agent to Borrower.

    (b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender or Agent to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

4

DocuSign Envelope ID: 7C2E3D32-ABE3-4FD2-80D2-F855F719E760

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3     Automatic Acceleration.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

# ARTICLE FIVE

## Miscellaneous

5.1     Definitions.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

AGENCY AND LOAN AGREEMENT Wall017
4052018_017

5.4    Texas Law.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5    Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6    Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7    Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

<table>
<tr><td>TO AGENT:</td><td>Platinum Investment Corporation<br>Attn:  Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611</td></tr>
<tr><td>TO BORROWER:</td><td>Wall 017, LLC<br>c/o Tim Barton<br>1755 Wittington Place, Suite 340<br>Dallas, TX  75234<br>tbarton@jmjdevelopment.net<br>972-385-9934 (office)</td></tr>
<tr><td>TO CO-LENDER:</td><td>Lu Jiaxiang<br>Zone 1-196, Luojiazhuang Xiyuan, Wenxin Community, Xihu District, Hangzhou, Zhejiang, China<br>kfcljx1986@163.com<br>86- 13806501150</td></tr>
</table>

5.8    Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 <u>Representations Survive</u>. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 <u>No Waiver</u>. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 <u>Confidentiality</u>. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

DocuSign Envelope ID: 7C2E3D32-ABE3-4FD2-80D2-F855F719E760

**"CO-LENDER"**



2/1/2019

**"BORROWER"**

WALL 017, LLC



By: _____   2/1/2019

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _____   2/1/2019

Name: Michael Fu
Title:   Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

### DECLARATION OF FUQING CHEN IN SUPPORT OF INVOLUNTARY PETITION

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.      I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor").  I have firsthand knowledge of the facts as set forth herein.

2.      Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3.      The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.      More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.      As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

DocuSign Envelope ID: B9427F85-5361-4C8E-861B-5CCC6A22134C

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:

*FUQING CHEN*

1EFB359D25F6474

FUQING CHEN

218183259v1

DocuSign Envelope ID: B9427F85-5361-4C8E-861B-5CCC6A22134C

## AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated _ November 29 _, 2018, and is between _ Chen Fuqing _ (Passport No: _ED0856325_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1   <u>The Loan.</u>   Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

  (a)   <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

  (b)   <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $ _120,000____ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

   Principal and interest:

   Principal: USD $ _120,000_ - _ One Hundred and Twenty Thousand _ and No/100 Dollars

   Interest:  Interest amount equal to _ Ten _ percent (_10_%) per annum commencing on _ January 1st, 2019 _, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after _ January 1st, 2020 _.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of _ January 1st, 2021 _.  Sums not paid by such times, shall bear interest at the rate of _ Twelve _ percent (_12_%) per annum from the dates payments were due.

  Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

(c)    <u>Loan Purpose</u>:

(i)    The Loan shall be evidenced by this Agreement.  The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property").  The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

(ii)    <u>No Commitment for Additional/Permanent Financing</u>:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    <u>Pre-payment</u>.  Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest.  Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal.  Prepayments shall be applied to payments next due under the Loan.

# ARTICLE TWO

## <u>Representations of Borrower</u>

Borrower represents, covenants, and warrants that:

2.1    <u>Representations</u>.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    <u>Power and Authority</u>:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification.  The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3    <u>Violation of Law; Breach of Agreements</u>.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

2

DocuSign Envelope ID: B9427F85-5361-4C8E-861B-5CCC6A22134C

(a)     Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)     Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4     <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5     <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

### <u>Affirmative Covenants of Borrower</u>

3.1     <u>Covenants</u>

(a)     Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)     All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)     Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2     Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

    (a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

    (b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4

DocuSign Envelope ID: B9427F85-5361-4C8E-861B-5CCC6A22134C

4.3     <u>Automatic Acceleration</u>.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     <u>Right of Set Off</u>.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     <u>Progress Reporting</u>.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## <u>Miscellaneous</u>

5.1     <u>Definitions</u>.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     <u>Construing Loan Papers</u>.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     <u>Renewals and Extensions</u>.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4     <u>Texas Law</u>.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

AGENCY AND LOAN AGREEMENT Wall017
4052018_017

5.5     Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6     Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7     Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

> TO AGENT:         Platinum Investment Corporation
>                   Attn:  Michael Fu
>                   B4-1015 West Lake International
>                   Hangzhou
>                   Michael@yding.cn
>                   281-318-8611
>
> TO BORROWER:      Wall 017, LLC
>                   c/o Tim Barton
>                   1755 Wittington Place, Suite 340
>                   Dallas, TX  75234
>                   tbarton@jmjdevelopment.net
>                   972-385-9934 (office)
>
> TO CO-LENDER:     Chen Fuqing
>                   5 Yi - 808, Qianhe Garden, No.108 Beisihuan Donglu,
>                   Chaoyang District, Beijing, China
>                   Tourist001@163.com
>                   (86) 13051028868

5.8     Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9     Representations Survive.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the

Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10     No Waiver.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11     Confidentiality.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

AGENCY AND LOAN AGREEMENT Wall017
4052018_017

DocuSign Envelope ID: B9427F85-5361-4C8E-861B-5CCC6A22134C

**"CO-LENDER"**



DocuSigned by:

*FUQING CHEN*                     11/29/2018

_____
1EFB359D25E6474...


**"BORROWER"**

WALL 017, LLC

DocuSigned by:

By:     *Tim Barton*              12/11/2018
       _____
       55E2G214E42B42F...
       Tim Barton as President of Carnegie Development, LLC,
       The Managing Member of Wall 017, LLC


**"AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:

By:     *Michael Fu*              11/29/2018
       _____
       86EE266F063C423...
Name: Michael Fu
Title:   Chief Executive Officer

8

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

## <u>DECLARATION OF HANJIANG FU IN SUPPORT OF INVOLUNTARY PETITION</u>

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.      I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>").  I have firsthand knowledge of the facts as set forth herein.

2.      Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3.      The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.      More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.      As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

HANJIANG FU

218183266v1

2

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

## AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __December 3__, 2018, and is between __Fu Hanjiang__ (Passport No: __G35075038__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

### The Loan

1.1 <u>The Loan.</u>    Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $ __100,000____ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal:  USD  $ __100,000 - One Hundred Thousand__  and No/100 Dollars

Interest:  Interest amount equal to  __Eleven__ percent ( __11__ %) per annum commencing on  __January 1st, 2019__ , or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after  __January 1st, 2020___.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of  __January 1st, 2021___ .  Sums not paid by such times, shall bear interest at the rate of  __Thirteen__  percent ( __13__ %) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

     (c)    <u>Loan Purpose</u>:

        (i)    The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property"). The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

        (ii)    <u>No Commitment for Additional/Permanent Financing</u>: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.   <u>Pre-payment</u>. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

# ARTICLE TWO

## <u>Representations of Borrower</u>

    Borrower represents, covenants, and warrants that:

2.1   <u>Representations</u>. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2   <u>Power and Authority</u>: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3   <u>Violation of Law; Breach of Agreements</u>. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

2

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

(a)     Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)     Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4     <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5     <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

**ARTICLE THREE**

**<u>Affirmative Covenants of Borrower</u>**

3.1     <u>Covenants</u>

(a)     Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)     All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)     Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2     Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

4.3     <u>Automatic Acceleration</u>.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     <u>Right of Set Off</u>.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     <u>Progress Reporting</u>.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

### Miscellaneous

5.1     <u>Definitions</u>.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     <u>Construing Loan Papers</u>.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     <u>Renewals and Extensions</u>.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4     <u>Texas Law</u>.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

5.5    <u>Maximum Rate of Interest</u>.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6    <u>Collateral</u>.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7    <u>Notice</u>.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

|  |  |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn:  Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 017, LLC<br>c/o Tim Barton<br>1755 Wittington Place, Suite 340<br>Dallas, TX  75234<br>tbarton@jmjdevelopment.net<br>972-385-9934 (office) |
| TO CO-LENDER: | Fu Hanjiang<br>1-1-201,Yaojiang Fucun, Shangcheng District,<br>Hangzhou, Zhejiang, China<br>937781790@qq.com<br>(86) 13905819547 |

5.8    <u>Place of Payment</u>.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9    <u>Representations Survive</u>.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the

6

DocuSign Envelope ID: BA289D27-7138-4A94-A980-C9C8088C8A8B

Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10   No Waiver.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11   Confidentiality.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

_Fu Hanjiang_                    12/19/2018
————————————————
FDB3A8A52EEC4C0...

**"BORROWER"**

WALL 017, LLC

By: _Tim Barton_                    12/19/2018
    ————————————————
    55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _Michael Fu_                    12/3/2018
    ————————————————
    86EE266F063C423...
Name: Michael Fu
Title:  Chief Executive Officer

DocuSign Envelope ID: 9E744A10-8F65-43A0-AF3D-A20483827E29

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

**DECLARATION OF AIGUO LUO IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.      I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor").  I have firsthand knowledge of the facts as set forth herein.

2.      Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3.      The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.      More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.      As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

DocuSign Envelope ID: 9E744A10-8F65-43A0-AF3D-A20483827E29

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

DocuSigned by:

*Aiguo Luo*

E80095162CD7489...

AIGUO LUO

218183282v1

2

DocuSign Envelope ID: 9E744A10-8F65-43A0-AF3D-A20483827E29

## AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __December 3__, 2018, and is between __Luo Aiguo__ (Passport No: __G53172582__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

### The Loan

1.1 __The Loan.__ Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

    (a)   __Agency__: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

    (b)   __Terms of Lender Commitment__: Co-Lender agrees to lend $ __100,000__ of the total loan amount of $8,800,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

        Principal and interest:

        Principal: USD $ __100,000 - One Hundred Thousand__ and No/100 Dollars

        Interest: Interest amount equal to __Ten__ percent (__10__%) per annum commencing on __January 1st, 2019__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after __January 1st, 2020__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __January 1st, 2021__. Sums not paid by such times, shall bear interest at the rate of __Twelve__ percent (__12__%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

(c)     Loan Purpose:

(i)     The Loan shall be evidenced by this Agreement.  The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property").  The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

(ii)    No Commitment for Additional/Permanent Financing:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    Pre-payment.  Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest.  Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal.  Prepayments shall be applied to payments next due under the Loan.

# ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1    Representations.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    Power and Authority:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification.  The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3    Violation of Law; Breach of Agreements.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a)    Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)    Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4    <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5    <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

**ARTICLE THREE**

**<u>Affirmative Covenants of Borrower</u>**

3.1    <u>Covenants</u>

(a)    Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)    All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)    Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2    Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
### Default and Acceleration

4.1     <u>Events of Default</u>.      An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4

4.3     Automatic Acceleration.   All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.   Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.   The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.   The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.   Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:   the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1     Definitions.   Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.   This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.   This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4     Texas Law.   This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5     Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6     Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7     Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:              Platinum Investment Corporation
                       Attn:  Michael Fu
                       B4-1015 West Lake International
                       Hangzhou
                       Michael@yding.cn
                       281-318-8611

TO BORROWER:           Wall 017, LLC
                       c/o Tim Barton
                       1755 Wittington Place, Suite 340
                       Dallas, TX  75234
                       tbarton@jmjdevelopment.net
                       972-385-9934 (office)

TO CO-LENDER:          Luo Aiguo
                       2-2-1401, Xiyuan, Jialvjingyuan Dongxiyuan,
                       Xihu District, Hangzhou, Zhejiang, China
                       373892105@qq.com
                       (86) 13705711191

5.8     Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9     Representations Survive.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the

6

Loan.  All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    No Waiver.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    Confidentiality.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

7

**"CO-LENDER"**

_[signature]_                    12/4/2018

E80095162CD7489

**"BORROWER"**

WALL 017, LLC

By: _[signature: Tim Barton]_        12/11/2018

55E2C214E42B42F

     Tim Barton as President of Carnegie Development, LLC,
     The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _[signature: Michael Fu]_        12/3/2018

86EE266F063C423

Name: Michael Fu
Title:   Chief Executive Officer

8

DocuSign Envelope ID: 0B4A0CC9-AA55-43E5-8C9D-8C956DE734A7

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

### <u>DECLARATION OF FANG DING IN SUPPORT OF INVOLUNTARY PETITION</u>

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.  I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>"). I have firsthand knowledge of the facts as set forth herein.

2.  Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3.  The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.  More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.  As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

DocuSign Envelope ID: 0B4A0CC9-AA55-43E5-8C9D-8C956DE734A7

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

FANG DING

218183287v1

2

DocuSign Envelope ID: 0B4A0CC9-AA55-43E5-8C9D-8C956DE734A7

## AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __December 10__, 2018, and is between __Ding Fang__ (Passport No: __E45523348__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 <u>The Loan.</u>   Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

    (a)   <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

    (b)   <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $ __100,000__ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

    Principal and interest:

    Principal:  USD $ __100,000 - One Hundred Thousand__ and No/100 Dollars

    Interest:  Interest amount equal to __Ten__ percent (__10__%) per annum commencing on __January 1st, 2019__, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __January 1st, 2020__.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __January 1st, 2021__.  Sums not paid by such times, shall bear interest at the rate of __Twelve__ percent (__12__%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

    (c)    <u>Loan Purpose</u>:

    (i)    The Loan shall be evidenced by this Agreement.  The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property").  The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

    (ii)    <u>No Commitment for Additional/Permanent Financing</u>:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.   <u>Pre-payment</u>.  Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest.  Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal.  Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

### Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1   <u>Representations</u>.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2   <u>Power and Authority</u>:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification.  The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3   <u>Violation of Law; Breach of Agreements</u>.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

2

DocuSign Envelope ID: 0B4A0CC9-AA55-43E5-8C9D-8C956DE734A7

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 <u>Enforceability</u>. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 <u>Taxes</u>. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

### Affirmative Covenants of Borrower

3.1 <u>Covenants</u>

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

> (a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

> (b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3     Automatic Acceleration.   All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.   Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1     Definitions.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4     Texas Law.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5     Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6     Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7     Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

             TO AGENT:              Platinum Investment Corporation
                                    Attn:  Michael Fu
                                    B4-1015 West Lake International
                                    Hangzhou
                                    Michael@yding.cn
                                    281-318-8611

             TO BORROWER:           Wall 017, LLC
                                    c/o Tim Barton
                                    1755 Wittington Place, Suite 340
                                    Dallas, TX  75234
                                    tbarton@jmjdevelopment.net
                                    972-385-9934 (office)

             TO CO-LENDER:          Ding Fang
                                    No.2, Lane 218, Xiuyan Xi Road, Pudong, Shanghai, China
                                    elvamm72@qq.com
                                    (86) 13601614072

5.8     Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9     Representations Survive.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan.  All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

6

5.10    <u>No Waiver</u>.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    <u>Confidentiality</u>.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**


3FAD10B850E047D...                    12/15/2018

**"BORROWER"**

WALL 017, LLC

By: _____        12/18/2018
Tim Barton
55E2G214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _____
Michael Fu
86EE266F063C423...                    12/10/2018

Name: Michael Fu
Title:  Chief Executive Officer

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

## DECLARATION OF XIANGDONG ZHU IN SUPPORT OF INVOLUNTARY PETITION

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.      I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor").  I have firsthand knowledge of the facts as set forth herein.

2.      Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3.      The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.      More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.      As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6.    The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  3/22/2020

XIANGDONG ZHU

218183297v1

DocuSign Envelope ID: C852BEBD-C547-4944-907C-DEA962896413

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __December 10__, 2018, and is between _Zhu Xiangdong_ (Passport No: __G61051758__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1   <u>The Loan.</u>    Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

    (a)   <u>Agency</u>: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

    (b)   <u>Terms of Lender Commitment</u>: Co-Lender agrees to lend $__100,000____ of the total loan amount of $8,800,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

        Principal and interest:

        Principal: USD $_100,000_- One Hundred Thousand_ and No/100 Dollars

        Interest: Interest amount equal to _Ten_ percent (_10_%) per annum commencing on _January 1st, 2019__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after __January 1st, 2020___. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of _January 1st, 2021___. Sums not paid by such times, shall bear interest at the rate of _Thirteen__ percent (_13_%) per annum from the dates payments were due.

    Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

(c)     Loan Purpose:

(i)     The Loan shall be evidenced by this Agreement.  The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property").  The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

(ii)    No Commitment for Additional/Permanent Financing:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    Pre-payment.  Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest.  Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal.  Prepayments shall be applied to payments next due under the Loan.

# ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1    Representations.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    Power and Authority:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification.  The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3    Violation of Law; Breach of Agreements.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a)    Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)    Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4    <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5    <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

### <u>Affirmative Covenants of Borrower</u>

3.1    <u>Covenants</u>

(a)    Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)    All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)    Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2    Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

### ARTICLE FOUR
### Default and Acceleration

4.1     <u>Events of Default</u>.      An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3    <u>Automatic Acceleration</u>.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4    <u>Right of Set Off</u>.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5    <u>Progress Reporting</u>.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

# ARTICLE FIVE

## Miscellaneous

5.1    <u>Definitions</u>.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2    <u>Construing Loan Papers</u>.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3    <u>Renewals and Extensions</u>.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4    <u>Texas Law</u>.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

DocuSign Envelope ID: C852BEBD-C547-4944-907C-DEA962896413

5.5     <u>Maximum Rate of Interest</u>.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6     <u>Collateral</u>.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7     <u>Notice</u>.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

|  |  |
|---|---|
| TO AGENT: | Platinum Investment Corporation |
|  | Attn:  Michael Fu |
|  | B4-1015 West Lake International |
|  | Hangzhou |
|  | Michael@yding.cn |
|  | 281-318-8611 |
|  |  |
| TO BORROWER: | Wall 017, LLC |
|  | c/o Tim Barton |
|  | 1755 Wittington Place, Suite 340 |
|  | Dallas, TX  75234 |
|  | tbarton@jmjdevelopment.net |
|  | 972-385-9934 (office) |
|  |  |
| TO CO-LENDER: | Zhu Xiangdong |
|  | 2-8-1705, Lvdi Haiwaitan Garden, Yunfei Road, Jiangbei District, Ningbo, Zhejiang, China |
|  | 474502048@qq.com |
|  | (86) 13306709096 |

5.8     <u>Place of Payment</u>.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9     <u>Representations Survive</u>.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan.  All

6

DocuSign Envelope ID: C852BEBD-C547-4944-907C-DEA962896413

statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    No Waiver.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    Confidentiality.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**



Zhu Xiangdong

**"BORROWER"**

WALL 017, LLC

By: Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By:
Name: Michael Fu
Title: Chief Executive Officer

DocuSign Envelope ID: 6E317DE6-F220-4326-A882-EED0121B97EF

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
|     Alleged Debtor. | |

### <u>DECLARATION OF WAI YING IN SUPPORT OF INVOLUNTARY PETITION</u>

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.      I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>").  I have firsthand knowledge of the facts as set forth herein.

2.      Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3.      The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.      More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.      As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

DocuSign Envelope ID: 6E317DE6-F220-4326-A882-EED0121B97EF

6.    The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:

*Wai Ying*

39C3AB4D7E6547A...

WAI YING

218183308v1

## AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __December 13__, 2018, and is between _Ying Wai_ (Passport No: __K01895975__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

### The Loan

1.1    <u>The Loan.</u>    Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a)    <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b)    <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $ _100,000_____ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_100,000_ - One Hundred Thousand_ and No/100 Dollars

Interest:  Interest amount equal to _Nine_ percent (_9_%) per annum commencing on _January 1st, 2019__, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __January 1st, 2020___.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of _January 1st, 2021___.  Sums not paid by such times, shall bear interest at the rate of _Thirteen__ percent (_13_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

DocuSign Envelope ID: 6E317DE6-F220-4326-A882-EED0121B97EF

    (c)    <u>Loan Purpose</u>:

        (i)    The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property"). The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

        (ii)    <u>No Commitment for Additional/Permanent Financing</u>: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    <u>Pre-payment</u>. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## <u>Representations of Borrower</u>

    Borrower represents, covenants, and warrants that:

2.1    <u>Representations</u>. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    <u>Power and Authority</u>: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3    <u>Violation of Law; Breach of Agreements</u>. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

2

    (a)    Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

    (b)    Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4    <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5    <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

**ARTICLE THREE**

**<u>Affirmative Covenants of Borrower</u>**

3.1    <u>Covenants</u>

    (a)    Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

    (b)    All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

    (c)    Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2    Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3

DocuSign Envelope ID: 6E317DE6-F220-4326-A882-EED0121B97EF

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

     (a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

     (b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

DocuSign Envelope ID: 6E317DE6-F220-4326-A882-EED0121B97EF

4.3     Automatic Acceleration.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

### Miscellaneous

5.1     Definitions.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4     Texas Law.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5   <u>Maximum Rate of Interest</u>. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6   <u>Collateral</u>. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7   <u>Notice</u>. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

|  |  |
|---|---|
| TO AGENT: | Platinum Investment Corporation |
| | Attn: Michael Fu |
| | B4-1015 West Lake International |
| | Hangzhou |
| | Michael@yding.cn |
| | 281-318-8611 |
| | |
| TO BORROWER: | Wall 017, LLC |
| | c/o Tim Barton |
| | 1755 Wittington Place, Suite 340 |
| | Dallas, TX 75234 |
| | tbarton@jmjdevelopment.net |
| | 972-385-9934 (office) |
| | |
| TO CO-LENDER: | Ying Wai |
| | 13-3-502, Yuefu Jiangnan, No.Yi-1, Yongding Road, |
| | Haidian District, Beijing, China |
| | 13911331588@139.com |
| | (86) 13522869919 |

5.8   <u>Place of Payment</u>. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9   <u>Representations Survive</u>. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All

6

DocuSign Envelope ID: 6E317DE6-F220-4326-A882-EED0121B97EF

statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    <u>No Waiver</u>.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    <u>Confidentiality</u>.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

DocuSign Envelope ID: 6E317DE6-F220-4326-A882-EED0121B97EF

**"CO-LENDER"**

_Ying Wai_

Ying Wai


**"BORROWER"**

WALL 017, LLC

By:    _Tim Barton_

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC


**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By:    _Michael Fu_

Name: Michael Fu
Title:   Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

<u>**DECLARATION OF YUAN YUAN IN SUPPORT OF INVOLUNTARY PETITION**</u>

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.      I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>").  I have firsthand knowledge of the facts as set forth herein.

2.      Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3.      The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.      More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.      As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6.     The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/26/2020

YUAN YUAN

218183314v1

## AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __December 5__, 2018, and is between __Yuan Yuan__ (Passport No: __G49795107__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1   <u>The Loan.</u>   Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a)   <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b)   <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $ __100,000__ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal:  USD  $ __100,000 -  One Hundred Thousand__  and No/100 Dollars

Interest:   Interest amount equal to __Ten__ percent (__10__%) per annum commencing on __January 1st, 2019__, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __January 1st, 2020__.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __January 1st, 2021__.  Sums not paid by such times, shall bear interest at the rate of __Twelve__ percent (__12__%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

(c)   Loan Purpose:

(i)   The Loan shall be evidenced by this Agreement.  The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property").  The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

(ii)   No Commitment for Additional/Permanent Financing:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.   Pre-payment.  Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest.  Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal.  Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1   Representations.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2   Power and Authority:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification.  The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3   Violation of Law; Breach of Agreements.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

2

DocuSign Envelope ID: EBE25AAB-B0C3-4EC4-B7FA-FAAB1FDF5F6A

(a)    Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)    Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4    <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5    <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## <u>Affirmative Covenants of Borrower</u>

3.1    <u>Covenants</u>

(a)    Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)    All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)    Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2    Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
### Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

   (a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

   (b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3    Automatic Acceleration.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4    Right of Set Off.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5    Progress Reporting.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

### Miscellaneous

5.1    Definitions.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2    Construing Loan Papers.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3    Renewals and Extensions.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4    Texas Law.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

DocuSign Envelope ID: EBE25AAB-B0C3-4EC4-B7FA-FAAB1FDF5F6A

5.5    <u>Maximum Rate of Interest</u>.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6    <u>Collateral</u>.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7    <u>Notice</u>.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:              Platinum Investment Corporation
                       Attn:  Michael Fu
                       B4-1015 West Lake International
                       Hangzhou
                       Michael@yding.cn
                       281-318-8611

TO BORROWER:           Wall 017, LLC
                       c/o Tim Barton
                       1755 Wittington Place, Suite 340
                       Dallas, TX  75234
                       tbarton@jmjdevelopment.net
                       972-385-9934 (office)

TO CO-LENDER:          Yuan Yuan
                       7-1, Ruili Zhongyang Huacheng, Jiangling Road,
                       Binjiang District, Hangzhou, Zhejiang, China
                       39353472@qq.com
                       (86) 13157759966

5.8    <u>Place of Payment</u>.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9    <u>Representations Survive</u>.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the

6

DocuSign Envelope ID: EBE25AAB-B0C3-4EC4-B7FA-FAAB1FDF5F6A

Loan.  All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    <u>No Waiver</u>.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    <u>Confidentiality</u>.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

DocuSign Envelope ID: EBF25AAB-B0C3-4EC4-B7FA-FAAB1FDF5F6A

**"CO-LENDER"**

_____   12/12/2018

**"BORROWER"**

WALL 017, LLC

By: _____   12/18/2018

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _____   12/5/2018

Name: Michael Fu
Title:  Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

In re:                                    Chapter 7

WALL017, LLC,                             Case No.

　　　　Alleged Debtor.

## <u>DECLARATION OF CHAO XU IN SUPPORT OF INVOLUNTARY PETITION</u>

　　　　Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty

of perjury under the laws of the United States, as follows:

　　　　1.　　　　I am a citizen of the People's Republic of China, and I am a Petitioning Creditor

of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>").  I have firsthand knowledge of the

facts as set forth herein.

　　　　2.　　　　Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the

one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning

Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in

the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as

Exhibit "<u>A</u>."

　　　　3.　　　　The Alleged Debtor is in default of the Loan Agreement as a result of, among

other things, its failure to repay sums as and when due thereunder.

　　　　4.　　　　More specifically, one or more interest payment(s) came due under the Loan

Agreement and remain unpaid.

　　　　5.　　　　As of the date hereof, Petitioning Creditor holds a claim against the Alleged

Debtor for the principal amount set forth, interest and other charges as may be applicable under

the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

DocuSign Envelope ID: B32BFEE8-5E79-40BD-9B3F-F06A31830BB4

6.	The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:	3/23/2020

CHAO XU

218183328v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __December 10_, 2018, and is between __Xu Chao___ (Passport No: __G52029293___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

### The Loan

1.1    The Loan.    Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

   (a)    Agency:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

   (b)    Terms of Lender Commitment:  Co-Lender agrees to lend $ _50,000____ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

      Principal and interest:

      Principal: USD $_50,000_-__Fifty Thousand__ and No/100 Dollars

      Interest:  Interest amount equal to _Eleven_ percent (_11_%) per annum commencing on _January 1st, 2019__, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __January 1st, 2020___.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __January 1st, 2021___.  Sums not paid by such times, shall bear interest at the rate of _Thirteen__ percent (_13_%) per annum from the dates payments were due.

   Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

    (c)    <u>Loan Purpose</u>:

        (i)    The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property"). The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

        (ii)    <u>No Commitment for Additional/Permanent Financing</u>: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    <u>Pre-payment</u>. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

# ARTICLE TWO

## Representations of Borrower

    Borrower represents, covenants, and warrants that:

2.1    <u>Representations</u>. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    <u>Power and Authority</u>: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3    <u>Violation of Law; Breach of Agreements</u>. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a)     Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)     Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4     <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5     <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

**ARTICLE THREE**

**<u>Affirmative Covenants of Borrower</u>**

3.1     <u>Covenants</u>

(a)     Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)     All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)     Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2     Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3

3.3    Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4    Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5    Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6    Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
### Default and Acceleration

4.1    <u>Events of Default</u>.    An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a)    Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b)    Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2    <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4

4.3     Automatic Acceleration.   All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.   Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.   Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1     Definitions.   Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to, notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.   This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.   This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4     Texas Law.   This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5

DocuSign Envelope ID: B32BFEE8-5E79-40BD-9B3F-F06A31830BB4

5.5    <u>Maximum Rate of Interest</u>.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6    <u>Collateral</u>.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7    <u>Notice</u>.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:            Platinum Investment Corporation
                     Attn:  Michael Fu
                     B4-1015 West Lake International
                     Hangzhou
                     Michael@yding.cn
                     281-318-8611

TO BORROWER:         Wall 017, LLC
                     c/o Tim Barton
                     1755 Wittington Place, Suite 340
                     Dallas, TX  75234
                     tbarton@jmjdevelopment.net
                     972-385-9934 (office)

TO CO-LENDER:        Xu Chao
                     6A-1203, Nuode Int'l, Qianhai-Yanhu Lukou, Nanshan
                     District, Shenzhen, Guangdong, China
                     helenaxu0915@aliyun.com
                     (86) 15012666468

5.8    <u>Place of Payment</u>.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9    <u>Representations Survive</u>.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the

DocuSign Envelope ID: B32BFEE8-5E79-40BD-9B3F-F06A31830BB4

Loan.  All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    <u>No Waiver</u>.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    <u>Confidentiality</u>.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

DocuSign Envelope ID: B32BFEE8-5E79-40BD-9B3F-F06A31830BB4

**"CO-LENDER"**



Xu Chao       12/11/2018

───────────────────────
015D7F42D0394A4


**"BORROWER"**

WALL 017, LLC

By: ───────────────────────    12/13/2018
      55E2C214E42B42F
      Tim Barton as President of Carnegie Development, LLC,
      The Managing Member of Wall 017, LLC


**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: ───────────────────────    12/10/2018
      86EE266F063C423...
Name: Michael Fu
Title:   Chief Executive Officer

8

DocuSign Envelope ID: 0BA9AECD-1956-4E67-B8F3-9E1CA787B98F

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

### DECLARATION OF GUOQIN ZHOU IN SUPPORT OF INVOLUNTARY PETITION

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.      I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor").  I have firsthand knowledge of the facts as set forth herein.

2.      Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3.      The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.      More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.      As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6.    The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 4/7/2020

DocuSigned by:

*Guoqin Zhou*

4ADEA6F85B57429...

GUOQIN ZHOU

218292297v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __October 17__, 2018, and is between __Zhou Guoqin__ (Passport No: _E90465995_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1    <u>The Loan.</u>    Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a)    <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b)    <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $__100,000__ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $__100,000 - One Hundred Thousand__ and No/100 Dollars

Interest:  Interest amount equal to __Nine__ percent (_9_%) per annum commencing on __November 1st, 2018__, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __November 1st, 2019__.  The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __November 1st, 2020__.  Sums not paid by such times, shall bear interest at the rate of __Eleven__ percent (_11_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

1

DocuSign Envelope ID: 0BA9AECD-1956-4E67-B8F3-9E1CA787B98F

(c)    <u>Loan Purpose</u>:

(i)    The Loan shall be evidenced by this Agreement.  The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property").  The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

(ii)    <u>No Commitment for Additional/Permanent Financing</u>:  **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    <u>Pre-payment</u>.  Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest.  Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal.  Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## <u>Representations of Borrower</u>

Borrower represents, covenants, and warrants that:

2.1    <u>Representations</u>.  All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2    <u>Power and Authority</u>:  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification.  The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3    <u>Violation of Law; Breach of Agreements</u>.  The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

2

DocuSign Envelope ID: 0BA9AECD-1956-4E67-B8F3-9E1CA787B98E

(a)     Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b)     Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4     <u>Enforceability</u>.  The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5     <u>Taxes</u>.  All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## <u>Affirmative Covenants of Borrower</u>

3.1     <u>Covenants</u>

(a)     Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b)     All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c)     Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2     Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1     Events of Default.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     Optional Acceleration.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4

4.3    <u>Automatic Acceleration</u>.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4    <u>Right of Set Off</u>.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5    <u>Progress Reporting</u>.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

# **ARTICLE FIVE**

## <u>**Miscellaneous**</u>

5.1    <u>Definitions</u>.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2    <u>Construing Loan Papers</u>.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3    <u>Renewals and Extensions</u>.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4    <u>Texas Law</u>.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

DocuSign Envelope ID: 0BA9AECD-1956-4E67-B8F3-9E1CA787B98E

5.5     Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6     Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7     Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

|  |  |
|---|---|
| TO AGENT: | Platinum Investment Corporation |
|  | Attn:  Michael Fu |
|  | B4-1015 West Lake International |
|  | Hangzhou |
|  | Michael@yding.cn |
|  | 281-318-8611 |
|  |  |
| TO BORROWER: | Wall 017, LLC |
|  | c/o Tim Barton |
|  | 1755 Wittington Place, Suite 340 |
|  | Dallas, TX  75234 |
|  | tbarton@jmjdevelopment.net |
|  | 972-385-9934 (office) |
|  |  |
| TO CO-LENDER: | Zhou Guoqin |
|  | 22-2, Xinda Yinjun Xiangyuan, No.777 Xijiao Rd., |
|  | Yuecheng District, Shaoxing City, Zhejiang Province, China |
|  | nacee@fuluogarments.com |
|  | (86) 13957505115 |

5.8     Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9     Representations Survive.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the

6

DocuSign Envelope ID: 0BA9AECD-1956-4E67-B8F3-9E1CA787B98F

Loan.  All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    No Waiver.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    Confidentiality.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**



11/6/2018

**"BORROWER"**

WALL 017, LLC

By:     11/7/2018

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _Michael Fu_    10/17/2018

Name: Michael Fu
Title:   Chief Executive Officer

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 7 |
| WALL017, LLC, | Case No. |
| Alleged Debtor. | |

## <u>DECLARATION OF YIJING WU IN SUPPORT OF INVOLUNTARY PETITION</u>

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1.     I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>").  I have firsthand knowledge of the facts as set forth herein.

2.     Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3.     The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4.     More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5.     As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6.      The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 4/6/2020

YIJING WU

218292530v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __October 16__, 2018, and is between __Wu Yijing__ (Passport No: __G45202760__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 017, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1    <u>The Loan.</u>    Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

    (a)    <u>Agency</u>:  Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan.  Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

    (b)    <u>Terms of Lender Commitment</u>:  Co-Lender agrees to lend $ __550,000__ of the total loan amount of $8,800,000 ("Commitment").  Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment.  If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

        Principal and interest:

        Principal: USD $ __550,000 - Five Hundred and Fifty Thousand__ and No/100 Dollars

        Interest:  Interest amount equal to __Fifteen__ percent (__15__%) per annum commencing on __November 1st, 2018__, or such later date that the Loan is funded to Borrower.  The first year's interest will be due to the Lender, within ten (10) business days after __November 1st, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __November 1st, 2020__. Sums not paid by such times, shall bear interest at the rate of __Seventeen__ percent (__17__%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans.  Agent's fee for such services shall be paid by Borrower.  Wherever this Agreement requires

1

payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c)     Loan Purpose:

       (i)       The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 200 acres located in Forney, Kaufman County, State of Texas for residential lot development known as Windmill Farms ("Property"). The Property has a purchase price of $11,000,000 and the balance of funds will be provided by Borrower.

       (ii)      No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2.    Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

### Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1     Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2     Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2

2.3 <u>Violation of Law; Breach of Agreements</u>. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

    (a)    Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

    (b)    Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 <u>Enforceability</u>. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 <u>Taxes</u>. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## <u>Affirmative Covenants of Borrower</u>

3.1 <u>Covenants</u>

    (a)    Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

    (b)    All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

    (c)    Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

AGENCY AND LOAN AGREEMENT Wall017
4052018_017

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3     Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4     Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5     Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6     Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
### Default and Acceleration

4.1     <u>Events of Default</u>.     An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

    (a)     Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

    (b)     Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2     <u>Optional Acceleration</u>.  Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

4

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3     Automatic Acceleration.  All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4     Right of Set Off.  Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party.  The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5     Progress Reporting.  Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include:  the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

# ARTICLE FIVE

## Miscellaneous

5.1     Definitions.  Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2     Construing Loan Papers.  This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3     Renewals and Extensions.  This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5

5.4     Texas Law.  This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5     Maximum Rate of Interest.  The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled.  In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan.  The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6     Collateral.  100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders.  Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7     Notice.  Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:          Platinum Investment Corporation
                   Attn:  Michael Fu
                   B4-1015 West Lake International
                   Hangzhou
                   Michael@yding.cn
                   281-318-8611

TO BORROWER:       Wall 017, LLC
                   c/o Tim Barton
                   1755 Wittington Place, Suite 340
                   Dallas, TX  75234
                   tbarton@jmjdevelopment.net
                   972-385-9934 (office)

TO CO-LENDER:      Wu Yijing
                   4-4-1403, Huafangyicheng, No.29 Qingnian Rd,
                   Chaoyang Dist., Beijing, China
                   110041228@qq.com
                   (86)13811055575

5.8     Place of Payment.  All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

6

5.9     Representations Survive.  All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan.  All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10    No Waiver.  No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11    Confidentiality.  The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency.  The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

DocuSign Envelope ID: 552B0CF4-3072-4BE7-BDCE-AD217DE339F0

**"CO-LENDER"**



_____

**"BORROWER"**

WALL 017, LLC

By: _____

        Tim Barton as President of Carnegie Development, LLC,
        The Managing Member of Wall 017, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: _____
Name: Michael Fu
Title:  Chief Executive Officer